Filed 6/13/25  P. v. Altobell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100537 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE019895) |
| v. | |
| MICHAEL VANCE ALTOBELL, | |
| Defendant and Appellant. | |

Defendant Michael Vance Altobell pleaded no contest to possession of fentanyl for sale and possession of a firearm by a felon in exchange for an agreed-upon aggregate sentence of seven years four months in prison.  Before the trial court imposed sentence, the prosecutor recited an advisement informing defendant of the dangers of controlled substances generally, and fentanyl specifically, and cautioned that if—in the future—he manufactured, sold, distributed, or shared a controlled substance and someone died as a result, he could be charged with murder.  Defendant's only contention on appeal is that

1

we should strike the advisement because it was unconstitutional. We will dismiss the appeal as presenting an unripe, nonjusticiable issue.

BACKGROUND

Defendant was driving a vehicle when he was stopped by law enforcement. Officers searched the vehicle and found a loaded .25-caliber handgun, approximately 92 grams of fentanyl, a digital scale, and plastic baggies.

A felony complaint deemed an information charged defendant with possession of fentanyl for sale (Health & Saf. Code, § 11351; count one), possession of methamphetamine for sale (Health & Saf. Code, § 11378; count two), possession of methamphetamine and fentanyl while armed with a loaded, operable firearm (Health & Saf. Code, § 11370.1, subd. (a); count three), possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count four), and driving a vehicle without a valid driver's license (Veh. Code, § 12500, subd. (a); count five). The information alleged that defendant was personally armed with a firearm in the commission of counts one and two. (Pen. Code, § 12022, subd. (c).) The information also alleged defendant had two prior serious felony convictions, and therefore came within the provisions of the Three Strikes law. (Pen. Code, §§ 667, subd. (b)-(i), 1170.12.)

Defendant accepted the prosecution's plea offer and pleaded no contest to counts one and four in exchange for an agreed-upon aggregate prison sentence of seven years four months. He also admitted to one prior strike conviction.

Before the imposition of sentence, defense counsel objected on constitutional grounds to a "Fentanyl advisement" the prosecutor intended to recite. Defense counsel argued that the advisement was "not part of the deal," and was "something being stated by the People to lighten their constitutional burden in any potential future prosecutions." Defendant also filed a written motion to strike the advisement, which he characterized as an invalid term of the plea bargain.

2

The trial court permitted the prosecutor to recite the advisement. Before the trial court imposed sentence, the prosecutor advised defendant: "You are hereby advised that manufacturing, selling, distributing, or sharing controlled substances in any form is extremely dangerous to human life. You can kill the people who use these controlled substances or who are exposed to these controlled substances. [¶] This is especially true of controlled substances that contain synthetic opiates including fentanyl. Counterfeit pills can now be made to look exactly like legitimate pharmaceutical pills. Fentanyl is often found in counterfeit pills or mixed with other controlled substances such as methamphetamine, cocaine, MDMA, marijuana, and heroin. [¶] If you manufacture, sell, distribute, or share a controlled substance and someone dies as a result of using or being exposed to that controlled substance, you can be charged with murder."

Defendant was not prompted to respond in any way to this advisement, and he did not volunteer any response. Defense counsel again objected after the prosecutor's recitation, emphasizing that the advisement was non-statutory and was not part of the negotiated agreement. The trial court denied defense counsel's motion to strike the advisement.

The trial court then sentenced defendant to an aggregate prison term of seven years four months, consisting of the middle term of three years on count one, doubled based on defendant's prior strike conviction, and a consecutive term of one year four months, one-third the middle term doubled, on count four.

DISCUSSION

Defendant argues the advisement recited by the prosecutor was unconstitutional. He asserts that it violates the separation of powers doctrine because, by redefining the elements of implied malice in any future murder prosecution, the recital invades the Legislature's province to define crimes. He further argues that the advisement gives rise to a presumption that diminishes the People's burden of proof in any future murder

3

prosecution and thus violates his due process right to a fair trial. Finally, he argues the advisement infringes on his Fifth Amendment right against self-incrimination.

The People respond that defendant's contentions are unripe and moot and thus nonjusticiable because they "are based on hypothetical facts and a potential future trial that has yet to occur." The People further argue that defendant's contentions fail on the merits.

We agree with the People that defendant's arguments raise unripe, nonjusticiable issues. Accordingly, we will dismiss the appeal.

" 'California courts will decide only justiciable controversies. [Citations.] The concept of justiciability is a tenet of common law jurisprudence and embodies "[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . ." [Citations.] Justiciability . . . "involves the intertwined criteria of ripeness and standing." ' " (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722.) "The ripeness requirement . . . prevents courts from issuing purely advisory opinions. [Citation.] . . . [T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy. . . . [¶] . . . . 'The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citation.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " (*Pacific Legal Foundation v. California Coastal Commission* (1982) 33 Cal.3d 158, 170-171.) "Unripe cases are '[t]hose in which parties seek a judicial declaration on a question of law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.)

4

The constitutional challenges defendant makes to the prosecutor's advisement are based on its *potential* use against him in *hypothetical* future criminal proceedings. There are no pending criminal proceedings against him in which the People could rely on the advisement as evidence. As such, there is before us no actual controversy concerning the advisement. In other words, there is no "actual set of facts" that would serve to frame the constitutional issues defendant raises "with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Commission, supra*, 33 Cal.3d at p. 170.) Any dispute involving the People's use of the advisement in a criminal proceeding against defendant, as of now, is not " 'definite and concrete,' " nor is it currently " 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " (*Id*. at p. 171.) Any decision opining on the propriety of the advisement and its potential use in future criminal proceedings against defendant would, therefore, be purely advisory.

Defendant in his reply brief argues that the issues are justiciable because the "advisement was imposed as part of [his] sentencing and constitutes a concrete injury that is ripe for review." Defendant is incorrect. Here we must explicate what the advisement is and what it is not. The advisement was a statement recited by the prosecutor before the trial court imposed sentence. Contrary to defendant's framing of the advisement, it was not a "sentencing condition." The trial court did not impose it or recite it. (See generally *People v. Bongani El* (2021) 65 Cal.App.5th 963, 967 [trial court's "oral imposition of sentence constitutes the judgment in an action"].) The advisement was neither "imposed as part of [his] sentencing" nor "constitutes a concrete injury that is ripe for review." Thus, defendant's reliance on cases in which courts have adjudicated the constitutionality of probation or parole conditions is misplaced. Nor was the advisement a plea term. As defendant underscores, it was not something to which he agreed.

Defendant further asserts that "the advisement's potential use in future prosecutions creates an ongoing controversy that is neither speculative nor moot." We cannot agree. The advisement, if anything, may present an issue based on its "potential use in future prosecutions." This is by definition not an actual, ongoing, ripe, definite, and concrete controversy involving an actual set of facts. (See *Pacific Legal Foundation v. California Coastal Commission, supra*, 33 Cal.3d at pp. 170-171.) Rather, defendant's arguments are based on hypothetical facts involving a future prosecution for acts defendant has not committed. (See *id*. at p. 171.) Defendant refers to a "real, entirely nonspeculative and concrete harm," but that harm, as he acknowledges, can only arise in a future prosecution which may never happen based on acts defendant has not committed and may never commit. This harm is speculative, hypothetical, and therefore unripe.

Defendant relies on *Commonwealth of Pennsylvania v. State of West Virginia* (1923) 262 U.S. 553, for the proposition that an individual need not "await the consummation of threatened injury" to seek judicial relief. (*Id*. at p. 593.) However, in the sentence that follows the language quoted by defendant, the United States Supreme Court elaborated: "If the injury *is certainly impending* that is enough." (*Ibid*., italics added.) Here, the injury claimed by defendant is by no means "certainly impending." (*Ibid*.) Defendant may never commit acts that might subject him to prosecution. Even if he does, he could escape prosecution. Assuming he is prosecuted, the prosecutor may elect against attempting to use the advisement in the prosecution. Even if that theoretical prosecutor, in that theoretical prosecution, does offer evidence concerning the advisement, the trial court could exclude it. And, in litigating its admissibility, defendant would be able to raise in opposition to its admission every argument he attempts to raise here as to the advisement's constitutionality.

Defendant's appeal raises nonjusticiable issues that are unripe for our review. Accordingly, we will dismiss the appeal.

6

DISPOSITION

The appeal is dismissed.

_____\s_____,
Krause, J.

We concur:

_____\s_____,
Hull, Acting P. J.

_____\s_____,
Boulware Eurie, J.